# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RENODE COLLINS (#313898)**                           **CIVIL ACTION**

**VERSUS**

**JAMES M. LeBLANC, ET AL.**                          **NO. 11-0173-JJB-RLB**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Signed in Baton Rouge, Louisiana, on August 6, 2013.

                                    **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RENODE COLLINS (#313898)**                                              **CIVIL ACTION**

**VERSUS**

**JAMES M. LeBLANC, ET AL.**                                              **NO. 11-0173-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 31. This Motion is not opposed.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc, Warden Burl Cain, Deputy Warden Richard Peabody, Lt. Cindy Vannoy, Deputy Warden Darrel Vannoy, Legal Programs Director Trish Foster, and Secretary Designee Lindi Ramsay, complaining that his constitutional rights were violated in June, 2006, through the confiscation of seven (7) books which he had purchased for delivery to him at LSP.[1]

---

1. Attempts by the United States Marshal's Office to serve defendant Lindi Ramsay have proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of this defendant, specifically because defendant Ramsay is "not longer employed." See rec.doc.no. 28. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendant Lindi Ramsay be dismissed, without prejudice. The Court further notes, in any event, that the sole claim asserted by the plaintiff against this defendant, relative to the alleged wrongful denial of the plaintiff's administrative grievance, is not properly before this Court. See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005), and discussion, infra (holding that there is no due process right to a full investigation or a fair resolution of an inmate's administrative grievances). See also 28 U.S.C. § 1915(e), which authorizes this Court to dismiss a claim asserted in forma pauperis if the allegations of the plaintiff's Complaint fail to state a claim upon which relief may be granted.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a confiscation notice prepared by defendant Cindy Vannoy dated June 14, 2006, copies of the covers of four (4) publications ("Some like it Dark", "How to Win", "Street of Ho's" and "Gentleman Pimp"), a certified copy of the plaintiff's Administrative Remedy Proceedings (previously filed into the record), a copy of Department Regulation No. C-02-009 (relative to "Correspondence and Packages"), and the affidavits of Rhonda Z. Weldon and defendants Cindy Vannoy, Richard Peabody, Trish Foster, Burl Cain and Darryl Vannoy.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  Celotex Corporation v. Catrett, supra, at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  Anderson v. Liberty Lobby, Inc., supra, at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden

of proof at trial.  Celotex Corporation v. Catrett, supra, at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  Little v. Liquid Air Corp., supra, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992).

In his Complaint, the plaintiff alleges that in June, 2006, he received notification from the prison mailroom that seven books which he had ordered had been intercepted and were being withheld from him for the reason that six of the books "contain[ed] numerous explicit descriptions of sexual acts," and the seventh "contain[ed] information on gambling."  The plaintiff appealed this determination through the prison administrative remedy procedure and was advised, in a First Step Response dated February 3, 2010,[2] signed by defendants Richard Peabody and Cindy Vannoy, that upon review, three of the confiscated books were determined to be allowable but the remainder were found to be inappropriate upon a finding that (1) one of the publications "detail[ed] gambling techniques" and so was objectionable because inmates were not allowed to gamble at LSP, and (2) the three remaining books were objectionable because they "contain[ed] depictions of sexual acts involving minors."  The First Step Response further advised the plaintiff that all printed materials received at the institution are subject to rejection if

---

    2. The length of time between the plaintiff's submission of an administrative grievance and his receipt of a First Step Response is explained by the fact that the plaintiff had other administrative claims pending in the system.  As a result, his grievance relative to the confiscation of the referenced publications was placed on administrative backlog pursuant to prison rules, and was addressed after other pending grievances had been resolved.

such receipt "interferes with legitimate penological objectives (including but not limited to deterrence of crime, rehabilitation of inmates, maintenance of internal/external security ... or maintenance of an environment free of sexual harassment), ... [including] [p]ublications that depict nudity or sexually explicit conduct ....")  The plaintiff appealed this determination to the Office of the Secretary, Louisiana Department of Public Safety and Corrections, and was advised in a Second Step Response dated March 18, 2010, signed by the Secretary's Designee, that the decision to withhold the referenced publications was sustained.  The plaintiff asserts, however, that "dozens of inmates are allowed to order urban novels" at LSP, that Caucasian inmates at LSP are allowed to order books and/or obtain books from the prison library which contain sexually explicit material, that Caucasian inmates at LSP are allowed to obtain books from the prison library which pertain to the "killing of police officers as well as kids," and that the prison library provides "books that contain murder, rape and robbery to inmates who have been convicted of murder, rape and robbery."

Initially, the Court notes that the plaintiff has named the defendants in both their individual and official capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).  Specifically, in Hafer v. Melo, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. Id. at 25.  Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal.  In contrast, the

plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Id. at 29. Thus, a showing by the plaintiff that the defendant state officials, acting individually and under color of state law, intentionally caused the deprivation of the plaintiff's federal rights, would be enough to establish personal liability in a § 1983 lawsuit. Id.[3]

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the Court first finds that the plaintiff's claim for compensatory damages fails as a matter of law. Pursuant to 42 U.S.C. § 1997e(e), a prisoner plaintiff is barred from the receipt of compensatory damages for mental or emotional injury in the absence of some showing of physical injury. In the instant case, the plaintiff has not alleged that he has sustained any physical injury as a result of the defendants' alleged wrongdoing. Accordingly, this aspect of the plaintiff's claim must be rejected. Notwithstanding, the plaintiff might still be entitled to recover nominal or punitive damages, provided that he were able to make a showing that the defendants intentionally violated his constitutional rights. Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir. 2007).

---

3. Although the plaintiff asserts, in the body of his Complaint, that he is naming the defendants in their official capacities "for injunctive relief", see rec.doc.no. 1 at p. 7, ¶ 17-18, and although a claim for injunctive relief asserted in federal court against a defendant acting in his official capacity is not prohibited under the Eleventh Amendment (because such a suit is not treated as an action against the state), Will v. Michigan Department of State Police, supra, at 71; 15 Am. Jur. 2d Civil Rights § 101, the plaintiff includes no prayer for injunctive relief in his Complaint. To the contrary, in his prayer for relief, the plaintiff prays only for compensatory and punitive damages. Id. at p. 10. Accordingly, the Court need not address the plaintiff's official capacity claims relative to prospective injunctive relief. In addition, an award of injunctive relief would only be warranted upon a finding that the defendants have violated the plaintiff's constitutional rights and, as discussed hereafter, the Court fails to make such a finding.

The Court next addresses the defendants' contention that the plaintiff has failed to sufficiently allege or show the personal involvement of certain defendants in the events alleged. In this regard, in order for a government official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that the defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), citing Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).  See also Bell v. Livingston, 356 Fed. Appx. 715 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege and show that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed upon him by state law.  Lozano v. Smith, supra, 718 F.2d at 768.

Applying the foregoing standard, the Court finds that the plaintiff has failed to sufficiently allege or show conduct on the part of defendants James LeBlanc and Burl Cain which may be characterized as a violation of the plaintiff's constitutional rights.  Specifically, the plaintiff makes no assertion that these defendants had any direct or personal involvement in the decision to reject the plaintiff's publications in June, 2006.  Instead, the plaintiff seeks to impose liability

upon these defendants based on their alleged failure to train or supervise subordinate employees and their alleged failure to intervene in response to the plaintiff's administrative remedy proceedings.[4]

First, with regard to the alleged failure to train or supervise, the plaintiff makes only a conclusory assertion that there was a general failure to train and/or supervise subordinate employees. In order to establish a constitutional claim of liability based on a failure to train or supervise, however, the plaintiff must allege and show (1) that the defendants failed to train or supervise subordinate officers, (2) that a causal link existed between the failure to train or supervise and the violation of the plaintiff's constitutional rights, and (3) that the failure to train or supervise amounted to deliberate indifference. Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). The plaintiff has wholly failed to make such an allegation or showing, and his mere conclusory assertion regarding an alleged failure to train and/or supervise is insufficient to support a finding of liability under § 1983. See Yates v. Unidentified Parties, 73 Fed. Appx. 19, 20 (5th Cir. 2003), cert. denied, 540 U.S. 1123 (2004) (finding that the plaintiff's "vague and conclusional allegation" regarding an alleged failure to train and/or supervise was not sufficient to support liability). Moreover, deliberate indifference is a very high standard to meet and, in the context of a failure to train and/or supervise, generally requires "more than a single instance of the lack of training or supervision causing a violation of constitutional rights." Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003), cert. denied, 540 U.S. 1108 (2004), quoting Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001). Specifically, a plaintiff must demonstrate "at least a pattern of similar violations" that reflects deficiencies in training or supervision that are "so clearly inadequate as to be 'obviously

---

4. The plaintiff does not mount a challenge in this proceeding to the constitutionality of the prison's policies regarding the receipt, review and confiscation of incoming publications.

likely to result in a constitutional violation.'"  Id.  In the instant case, the plaintiff has made no attempt to allege or show such a pattern.  Accordingly, there is no legal or factual basis for concluding that either defendant LeBlanc or Cain is responsible or liable in this context, and these defendants are therefore entitled to judgment as a matter of law in connection with this claim.

The plaintiff also makes a conclusory assertion regarding the failure of defendants LeBlanc and Cain "to intervene in the ongoing grievance complaint."  Notwithstanding, the plaintiff does not have a constitutional right to have his administrative grievances investigated or favorably resolved.  Mahogany v. Miller, 252 Fed. Appx. 593 (5th Cir. 2007).  Moreover, there is no procedural due process right inherent in such a claim.  As stated by the United States Court of Appeals for the Fifth Circuit in Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

(Emphasis in original).  Accordingly, the plaintiff's claim asserted against defendants LeBlanc and Cain of an alleged failure to properly investigate, respond or take action in response to the plaintiff's administrative grievance is without legal foundation, and these defendants are entitled to judgment as a matter of law in connection with this claim.

Turning to the plaintiff's claim asserted against the remaining defendants, he complains that his constitutional right to due process has been violated by the defendants' actions in confiscating the referenced publications and in failing to return them to him. The plaintiff fails to state a cause of action in this regard, however, because the plaintiff was in fact provided with all

of the process that was due to him.[5]  In this regard, the Fifth Circuit has upheld prison policies which restrict the receipt of publications with explicit sexual content or that are deemed to be harmful to the security of the institution, so long as certain guidelines are followed and so long as the policies are "reasonably related to legitimate penological interests."  See Thompson v. Patteson, 985 F.2d 202, 206-07 (5th Cir. 1993), citing Thornburgh v. Abbott, 490 U.S. 401, 413 (1989), and Guajardo v. Estelle, 580 F.2d 748, 762 (5th Cir. 1978).  The Guajardo Court specifically approved procedures utilized by the Texas Department of Corrections which provided, inter alia, that:

> [b]efore delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior.  Prisoners must, of course, be allowed to appeal the decision through the proper administrative channels.

Id. at 762.  The Guajardo Court further noted that the Texas policy there under consideration provided prisoners with notification of the refusal, a reasonable opportunity to challenge the initial decision, and an ultimate decision by a disinterested party not privy to the initial censorship decision.  Id. at 762 n.10.  In the instant case, similarly, in accordance with the Louisiana policy then in effect, the plaintiff was provided with an initial written notice of rejection of the referenced publications, after which he availed himself of the available

---

5. The plaintiff also asserts a claim arising under the Fourth Amendment relative to the seizure and deprivation of his property.  This claim is effectively barred by the Parrat/Hudson doctrine, which precludes the assertion of § 1983 claims regarding mere deprivations of property where such deprivations have resulted from the intentional or unanticipated wrongful acts of prison officials and where the State provides adequate post-deprivation remedies for recovery of the property or for reimbursement for its loss.  See Hudson v. Palmer, 468 U.S. 517 (1984), and Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds in Daniels v. Williams, 474 U.S. 327, 330 (1986).  In the instant case, moreover, the deprivation complained of by the plaintiff was pursuant to a routine application of prison administrative directives and so did not constitute a deprivation of property without due process.  See Evans v. Baker, 442 Fed. Appx. 108 (5th Cir. 2011), cert. denied, ___ U.S. ___, 132 S.Ct. 1113 (2012).

administrative appeal procedures set forth in 22 La. Admin. Code, Part I, § 325.  He was thereafter provided with partial relief in the form of allowance of three of the rejected publications, and he was provided with a final administrative review and determination from the office of the Department Secretary.  Based upon this undisputed factual scenario, the Court is unable to conclude that the plaintiff was denied procedural due process as a result of the rejection of the referenced publications.

Although the plaintiff has not explicitly invoked the protections afforded by the First Amendment to the United States Constitution and although he has not challenged the constitutionality, as such, of the procedures in effect at LSP for review of incoming publications, his allegations may be interpreted as challenging the constitutionality of the manner in which these policies have been applied in the instant case.  In response to this contention, the defendants have asserted that they are entitled to qualified immunity in connection with the plaintiff's claims.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Huff v. Crites, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in Saucier v. Katz, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id. at 202.  The assertion of the

qualified immunity defense alters the summary judgment burden of proof.  <u>Michalik v. Hermann</u>, 422 F.3d 252, 262 (5th Cir. 2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  <u>Gates v. Texas Department of Protective and Regulatory Services</u>, 537 F.3d 404, 419 (5th Cir. 2008), <u>citing</u> <u>Michalik v. Hermann</u>, <u>supra</u>.

Applying the foregoing standard, the Court finds that the plaintiff has failed to allege facts which overcome the defendants' assertion of qualified immunity.  In this regard, the Court notes that a prisoner retains his rights under the First Amendment to the extent that such rights "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  <u>Pell v. Procunier</u>, 417 U.S. 817, 823 (1974).  In reviewing and evaluating a prison's determination regarding the receipt of particular publications, the courts strike a "delicate balance" between the prison's rehabilitation and security objectives and the prisoner's First Amendment rights, and prison determinations regarding the rejection of publications are subject to evaluation under a reasonableness standard, with such determinations being upheld if they are "reasonably related to legitimate penological interests."  <u>See</u> <u>Thornburgh v. Abbott</u>, <u>supra</u>, 490 U.S. at 413, <u>citing</u> <u>Turner v. Safely</u>, 482 U.S. 78, 89 (1987).  In applying this standard, courts are directed to evaluate (1) whether the determinations are "rationally related" to a legitimate penological goal, (2) whether alternative means of exercising First Amendment rights remain open to the inmate, (3) the impact that accommodating the asserted constitutional right will have on other inmates, guards and prison resources, and (4) the presence or absence of ready alternatives that would fully accommodate the prisoner's rights at a <u>de minimis</u> cost to valid penological interests.  <u>See</u> <u>Turner v. Safely, supra</u>, 482 U.S. at 89-90.  The plaintiff bears the

burden of showing that the prison determination is not reasonably related to legitimate penological objectives or that it is an exaggerated response to those concerns. See Beard v. Banks, 548 U.S. 521, 529 (2006), citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Further, the plaintiff must overcome the substantial deference granted to prison administrators who are tasked with determining the "appropriate means of furthering penological goals." Id. at 525. This deference is warranted because such officials "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, supra, 539 U.S. at 132.

The plaintiff has not met his burden in the instant case. In assessing a decision to reject a specific publication, the principal question, as above noted, is whether there is a "valid, rational connection" between the decision and a "legitimate governmental interest." Turner v. Safely, supra, , 482 U.S. at 89. The prison regulation in the instant case identifies several security issues for which a publication may be rejected, including the potential violation of prison rules and the potential creation of a sexually offensive environment through the allowance of sexually explicit materials, and the regulation also explicitly states that it is not limited to those security issues enumerated therein. The defendants have provided sworn attestations that three of the restricted publications include depictions of sex with minors, a clearly illegal activity, and the fourth provides information regarding gambling techniques, an activity which is banned at LSP. These attestations clearly suggest a rational connection between the decision made by prison officials to reject these publications and the legitimate governmental interests invoked to support that decision. In response, the plaintiff has neither opposed the defendants' motion nor offered any evidence for consideration by the Court to refute the defendants' assertions. Prison officials are not required to prove that a restricted publication would actually cause a problem in the prison,

and the application of the regulation may legitimately be based on a prison administrator's reasonable assessment of <u>potential</u> dangers.  <u>See</u> <u>Prison Legal News v. Livingston</u>, 683 F.3d 201, 216 (5th Cir. 2012).  The plaintiff acknowledges in his Complaint that other "urban novels" are allowed within the prison and that publications with similar themes are available in the prison library, thereby providing him with an alternative means of exercising his First Amendment rights.  Further, the defendants attest that accommodation of the plaintiff's claim in the instant case would have a potential adverse effect upon security and stability within the prison environment, and the plaintiff does not point to any ready alternative that would fully accommodate his rights at a <u>de minimis</u> cost to valid penological interests.  <u>See</u> <u>Turner v. Safely</u>, <u>supra</u>, 482 U.S. at 89 (noting that "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint").  Accordingly, the Court finds that the plaintiff has failed to establish any wrongdoing by prison officials in this case.

Finally, and particularly in light of the plaintiff's burden of proof in responding to the defendants' motion, the Court finds that the plaintiff's failure to file any opposition to the motion is fatal to his claim.  "When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if they show that the movant is entitled to judgment in his favor."  <u>Jegart v. Roman Catholic Church of Diocese of Houma Thibodaux</u>, 384 Fed. Appx. 398, 400 (5th Cir. 2010), <u>citing</u> <u>Eversley v. Mbank Dallas</u>, 843 F.2d 172, 174 (5th Cir. 1988). Further, the plaintiff's Complaint in this case is not verified as having been submitted under penalty of perjury, and "unsworn statements are 'not competent summary judgment evidence.'" <u>Moore v. True Temper Sports, Inc.</u>, ___ Fed. Appx. ___ , 2013 WL 2898076 (5th Cir. June 14,

2013), citing Okoye v. University of Texas Houston Health Science Center, 245 Fed.3d 507, 512-13 (5th Cir. 2001). See also Harris v. Smith, 482 Fed.Appx. 929 (5th Cir. 2012) (upholding a grant of summary judgment in favor of the defendants where "[t]he allegations in [the plaintiff's] complaint were unsworn, and [the plaintiff] offered no evidence in opposition to the defendants' motion"). Upon the plaintiff's failure in this case, therefore, to come forward with any opposition, argument, affidavit, sworn statement or other evidentiary showing to refute the factual assertions contained in the defendants' motion, summary judgment should be granted in favor of the defendants as a matter of law.

In addition to the foregoing, the plaintiff's Complaint may be interpreted as also complaining that his constitutional right to equal protection has been violated because prison officials allow certain publications to white inmates, with the implication that similar publications are not allowed to black inmates. This claim fails on several fronts. The Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated the same. See Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir. 1996). In order to establish a viable equal protection claim, an inmate plaintiff must allege and show that he is a member of a specific group and that prison officials have acted with a discriminatory purpose because of such membership. A discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001), citing Lavernia v Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988). The plaintiff must show (1) "that he received treatment different from that received by similarly situated individuals" and (2) "that the unequal treatment stemmed from a discriminatory intent." Id. An inmate cannot base an equal protection claim solely on a personal belief that he has been a victim

of discrimination. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995). Moreover, vague and conclusory allegations are insufficient to state an equal protection claim. See Pedraza v. Meyer, 919 F.2d 317 (5th Cir. 1990).

In the instant case, the plaintiff's suggestion that white inmates are treated differently than black inmates is entirely conclusory and is therefore insufficient to state a claim that prison officials intentionally singled out the plaintiff, as a member of a particular group, for disparate treatment. Specifically, there is no indication that the rejection of the publications ordered by the plaintiff was based upon anything other than a review of the publications themselves in the prison mailroom and/or upon a review of the publications on administrative appeal. There are no allegations of fact suggesting that the rejection of these publications was racially motivated or that any defendant was even aware of the plaintiff's race when they reviewed the publications. Further, the plaintiff has not identified a single publication that white inmates are allegedly allowed to order or possess that the plaintiff, as presumably a black inmate, is not. The plaintiff's mere assertion that white inmates are allowed to order – or obtain from the prison library – "books which contain sexually explicit material" and "books containing killing of police officers as well as kids" does not sufficiently establish that he is similarly situated to other inmates when he has failed to show the similarity of specific publications which have been allowed or rejected. Thus, the plaintiff's claim of disparate treatment is purely conclusory in nature and must be rejected. As stated by the Fifth Circuit in rejecting a similar claim asserted by a prison inmate:

> We think it is entirely clear that such an equal protection claim has no arguable merit. The objectives being pursued by the defendants were the legitimate and neutral ones of preserving prison security and promoting rehabilitation, and in their judgment exclusion of [the plaintiff's] books and magazines furthered those objectives. The rules necessarily confer a certain degree of discretion on the prison authorities in making this determination, and absent any allegation of an improper motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief."

Thompson v. Patteson, supra, 985 F.2d at 207.

Finally, the plaintiff's claim relative to the existence of an alleged unlawful conspiracy under 42 U.S.C. §§ 1985 and 1986 fares no better.  Section 1985(3) prohibits state officials from engaging in conspiracies to deprive persons, on the basis of their race, of their right to equal protection or their right to equal privileges and immunities under the laws.  Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  The plaintiff's Complaint, however, fails to provide any factual allegations suggesting that any defendant conspired with another person or otherwise agreed together to deprive the plaintiff of his rights.  See Green v. State Bar of Texas, 27 F.3d 1083, 1089 (5th Cir. 1994) (explaining that an "agreement among the parties" is a necessary element of a § 1985 claim).  Accordingly, his mere bare-bones assertion that the defendants entered into such an agreement, which assertion is not supported by any specific facts or details, does not create a genuine issue for trial.  See Moore v. Melvin, 42 F.3d 642 (5th Cir. 1994) (finding that the plaintiff had offered "no allegations to support an agreement between any of the defendants to violate his constitutional rights").  In addition, inasmuch as the Court concludes that the plaintiff's § 1985 claim is legally without foundation, his claim under § 1986, which claim depends for its viability upon a valid § 1985 claim, necessarily fails as well.  See Newberry v. East Texas State University, 161 F.3d 276, 281 n. 3 (5th Cir. 1998).  Accordingly, summary judgment should be granted in connection with the plaintiff's conspiracy claims.[6]

---

6. The Court notes that there are two additional claims which are referred to in this proceeding but which may be resolved without substantial discussion.  First, the plaintiff's Complaint includes a reference to a purported claim arising under the Thirteenth Amendment to the United States Constitution.  However, inasmuch as this Amendment pertains to the abolition of slavery and involuntary servitude in the United States, the Court finds that the plaintiff has failed to assert a claim or cause of action in this regard.  Further, the defendants assert in their pending Motion for Summary Judgment that the plaintiff has asserted a claim in this proceeding relative to a prison requirement that outgoing mail be delivered to prison officials unsealed.  Upon a review of the record, however, the Court has discerned no such claim.  Accordingly, this claim shall not be addressed.

To the extent that the plaintiff's Complaint may be interpreted as seeking to invoke the supplemental jurisdiction of this court, district courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims asserted against the defendants be dismissed, the Court further recommends that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendant Lindi Ramsay be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motion for Summary Judgment, rec.doc.no. 31, be granted, dismissing the plaintiff's federal claims, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 6, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**